## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 12 2019, 9:03 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald R. Shuler
Barkes, Kolbus, Rife & Shuler, LLP
Goshen, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Natalie F. Weiss
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Civil Commitment of:

M.L.,

*Appellant-Respondent,*

v.

Oaklawn Psychiatric Services,

*Appellee-Petitioner.*

August 12, 2019

Court of Appeals Case No. 19A-MH-392

Appeal from the Elkhart Superior Court

The Honorable Teresa L. Cataldo, Judge

The Honorable Eric S. Ditton, Magistrate

Trial Court Cause No. 20D03-1807-MH-553

**Najam, Judge.**

# Statement of the Case

M.L. appeals from the trial court's order that his involuntary commitment to Oaklawn Psychiatric Services ("Oaklawn") be renewed for one year. M.L. presents a single issue for our review, namely, whether Oaklawn presented sufficient evidence to support a conclusion that he is either dangerous to others or gravely disabled.

We affirm.

# Facts and Procedural History

This Court set out the facts relevant to this appeal in a recent appeal from a previous commitment:

> M.L. has a lengthy history of hospitalizations for mental illness. Most recently, M.L. was involuntarily committed under a regular commitment on February 29, 2016, following an emergency detention on February 17, 2016. The emergency detention was sought because M.L. was threatening to kill his landlord after M.L. was evicted. . . .
>
> . . . On September 20, 2017, Dr. Manana Gegeshidze, M.L.'s treating psychiatrist at Oaklawn since 2016, filed an application for transportation and detention, requesting M.L. be taken to Memorial Epworth Hospital because he was paranoid and delusional, had threatened to harm or kill neighbors, had shoved a neighbor, and had been observed several times carrying a butcher's knife around his apartment complex. . . .
>
> As of February 28, 2018, M.L. had been released back to outpatient treatment at Oaklawn. A report issued on that day indicated that M.L. continued to have paranoid and delusional

thoughts towards others and would not comply with treatment unless subject to a commitment. On March 1, 2018, M.L.'s regular commitment was continued on an outpatient basis without a hearing. On March 26, 2018, M.L. requested a review or dismissal of his commitment, and a hearing was held on April 9, 2018.

Dr. Gegeshidze testified at the hearing that M.L. suffers from chronic schizophrenia, auditory hallucinations, and somatic hallucinations, which include his belief that he has chips inserted in his thumbs, is pregnant, has babies, and is being controlled by outside forces. M.L. has experienced at least one catatonic episode. When Dr. Gegeshidze began treating M.L., he had incoherent speech, inappropriate affect and behavior, persecutory delusions, and psychotic behavior. Although his symptoms have improved while he has been in outpatient treatment pursuant to his commitment, he continues to be delusional. M.L.'s delusions include that he is being controlled by the CIA, the mafia, and aliens. M.L. believes that aliens have put a uterus in his stomach to grow alien babies.

* * *

The trial court also heard evidence relating to M.L.'s history of violence, including evidence that it dates back to at least 1994, when he committed an assault resulting in serious injury. In 2001, while admitted to the Federal Medical Center in Rochester, Minnesota, M.L. twice again assaulted people and seriously injured them. On three separate occasions, M.L. has threatened others with bodily harm. In November, 2017, M.L. was readmitted to the hospital for inpatient care because he threatened his neighbor. Most recently, in March 2018, M.L. threatened to kill his neighbor, this time talking about obtaining a gun. M.L. told Dr. Gegeshidze that he was a very violent man, he has harmed other people, is going to harm others, and is going to kill others. Dr. Gegeshidze testified that she saw a difference in M.L. at this point because he was talking about getting a gun.

Dr. Gegeshidze opined that M.L. is a "very dangerous man" and that commitment was still necessary because of M.L.'s noncompliance with his anti-psychotic medication protocols and his history of violence.

M.L. acknowledged at the hearing that he threatened to kill his neighbor because she "is pushing me to the limit." He also testified that he wanted the commitment vacated because he does not think "Oaklawn should have that much power or authority to delegate me to Evansville or Richmond without due process of the law." Following the hearing, the trial court ordered that M.L.'s commitment to Oaklawn be continued for a period to exceed ninety days. The trial court found that M.L. suffers from a mental illness pursuant to Indiana Code section 12-7-2-130 and poses a danger to others pursuant to Indiana Code section 12-7-2-53.

*M.L. v. Oaklawn OSJ*, No. 18A-MH-1114, 2018 WL 5578872, at *1-2 (Ind. Ct. App. Oct. 30, 2018) (citations omitted).

[4] On September 25, 2018, the trial court held a status hearing and authorized M.L.'s "future placement at a state psychiatric hospital (SPH) if warranted." Appellant's App. Vol. 2 at 127. During another status hearing on February 12, 2019, the trial court heard testimony from M.L.'s treating physician, Dr. Josh Mathew, as well as from M.L. Dr. Mathew recommended that M.L. be placed at Richmond State Hospital because M.L. "remains quite psychotic and paranoid and continues to express a lot of the delusional thoughts that he has been before, despite some adjustments in treatment." Tr. Vol. 2 at 14. Dr. Mathew testified further:

[M.L.] continues to feel like staff are calling him names and harming him. He's described the thought that he feels like people are ejaculating in his mouth every morning, that he has female body parts. He doesn't want to take a medicine because he thinks it will mess up pregnancies, which he's claimed to have hundreds of, and other delusional thought content. Given . . . the lack of significant change, we feel that he needs to be . . . returned to the state hospital.

*Id.* In particular, Dr. Mathew testified that M.L. is a danger to others and is gravely disabled, and he explained:

Since we had last talked, there have been incidents where he's touched a female inappropriately; he's claimed that he's done it more than that. And he explained to me that he felt like that women were trying to seduce him and sleeping with him, and those kind of thoughts or beliefs lead to much risk coming down the road as far as that repeating in the group homes again.

*Id.* at 15.

M.L., under oath, interjected during the hearing to state that he had given birth to "80 to 100" babies since 1992, which is when "the uterus was put in" him. *Id.* at 20. M.L. also told the court that "alien physicians" had recently removed his uterus. *Id.* at 20-21. Finally, M.L. stated:

I have neural implants in my brain. All I know is what the CIA and the aliens tell me. I mean, . . . I've explained this to the court. My attorneys have explained this to the court that all I know concrete as far as evidence is concerned is what the Central Intelligence Agency and the aliens and the mafia and the Department of Defense advise me on what to think and what to believe and what to expect and what to ignore.

*Id.* at 23.  At the conclusion of the hearing, the trial court renewed M.L.'s commitment to either a state psychiatric hospital or inpatient treatment at Oaklawn for one year.  This appeal ensued.

## Discussion and Decision

[6]  M.L. contends that Oaklawn presented insufficient evidence to sustain the continuation of his involuntary commitment.  The petitioner in a mental health commitment proceeding must prove by clear and convincing evidence that the person is mentally ill and either dangerous or gravely disabled and that detention or commitment of the person is appropriate.  Ind. Code § 12-26-2-5(e) (2019).  "In reviewing the sufficiency of the evidence supporting a determination made under the statutory requirement of clear and convincing evidence, an appellate court will affirm if, 'considering only the probative evidence and the reasonable inferences supporting it, without weighing evidence or assessing witness credibility, a reasonable trier of fact could find [the necessary elements] proven by clear and convincing evidence.'"  *T.K. v. Dept. of Veterans Affairs (In re Commitment of T.K.)*, 27 N.E.3d 271, 273 (Ind. 2015) (quoting *Bud Wolf Chevrolet, Inc. v. Robertson*, 519 N.E.2d 135, 137 (Ind. 1988)).  We look to the evidence most favorable to the trial court's decision and draw all reasonable inferences therefrom.  *R.P. v. Optional Behavior MHS (In re Commitment of R.P.)*, 26 N.E.3d 1032, 1035 (Ind. Ct. App. 2015).

[7]  M.L. does not dispute that he is mentally ill.  Rather, he contends that Oaklawn presented insufficient evidence to sustain the trial court's findings that he poses

a danger to others and that he is gravely disabled. Because the statute is written in the disjunctive, and in light of the evidence, we need only address whether the evidence is sufficient to prove that M.L. is a danger to others. *See* I.C. § 12-26-2-5(e).

[8] "Dangerous" is defined by Indiana Code Section 12-7-2-53 as "a condition in which an individual as a result of mental illness, presents a substantial risk that the individual will harm the individual or others." It is well established that "a trial court is not required to wait until harm has nearly or actually occurred before determining that an individual poses a substantial risk of harm to others." *J.B. v. Cmty. Hosp. N. (In re Commitment of J.B.)*, 88 N.E.3d 792, 796 (Ind. Ct. App. 2017). The evidence must indicate "that the behavior used as an index of a person's dangerousness would not occur but for the person's mental illness." *B.M. v. Ind. Univ. Health (In re Commitment of B.M.)*, 24 N.E.3d 969, 972 (Ind. Ct. App. 2015), *trans. denied*.

[9] On appeal, M.L. asserts that Oaklawn did not present evidence to show the "necessary causal connection between M.L.'s mental illness and being dangerous to himself [or] others." Appellant's Br. at 10. But Dr. Mathew testified that M.L. suffered from delusional thoughts; that M.L. "felt" like women "were trying to seduce him"; and that M.L. had touched women inappropriately. Tr. at 15. That testimony clearly shows that M.L. has harmed women as a result of his mental illness. And Dr. Mathew testified that there was "much risk" associated with that behavior going forward in terms of M.L. not being able to be placed back in a group home. *Id.* Further, the evidence

shows that M.L. has a long history of serious mental illness and violence and threatened violence against others. We cannot say that the trial court's finding that M.L. poses a danger to others is clearly erroneous. Accordingly, we hold that the trial court did not err when it renewed M.L.'s commitment for one year.

[10] Affirmed.

Bailey, J., and May, J., concur.